The Honorable Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of dissonance before the Honorable United States Court of Appeals for the Fourth Circuit are admonished and are allowed to leave their attention until the Court is now sitting. God Save the United States and His Honorable Court. Thank you. Please be seated. Welcome to the Fourth Circuit. We'll hear argument on our first case, United States v. Hammond. Ms. Hester, we'll be glad to hear from you. May it please the Court, Anne Hester representing Thomas Hammond. The Court should apply the categorical approach and conclude that New York's first-degree robbery offense does not qualify as a crime of violence in Thomas Hammond's case. Because when he was convicted in 1999, that offense could be committed by purse snatching. The Court has to apply the categorical approach because the government didn't offer any Shepard-approved documents to prove which alternative element of robbery formed the basis of Hammond's robbery conviction. In De Camp, the Supreme Court made clear that when a court applies the modified categorical approach, courts may only consider Shepard-approved documents to determine which alternative element of the offense the defendant was convicted of violating. And the only document that the government offered as proof of the elements underlying Hammond's conviction here is a New York Certificate of Disposition prepared 18 years after Hammond's conviction. That document is not Shepard-approved because Shepard limits the Court to using conclusive records made or used in adjudicating guilt. And it requires that the documents be part of the trial record. The Certificate of Disposition satisfies neither of those requirements. It was prepared 18 years after any records were made or used to adjudicate guilt. And it merely describes a clerk's after-the-fact examination of unidentified court records. Regardless of state evidentiary rules, it's not part of the trial record, and it doesn't satisfy Shepard. Jane, Ms. Hester, if we agree with you on that point, why isn't New York first-degree robbery a generic match? It's not a generic match because under Gaddis and Fluke, a generic robbery requires the use of more force than is necessary to remove the item from the victim's grasp. And in 1909, New York first-degree robbery could be committed without using that required amount of force for generic robbery or for the force clause either, in at least two different ways. First, in United States v. Steed, the First Circuit held that New York robbery can be based on a person actually committed with just enough force to engender awareness in the victim. And the Court in Steed relied on two New York cases to make that determination. First, it relied on Santiago, which is a 1980 case that held whether purse snatching without resistance by the victim constitutes a robbery, that that's an open question under New York law as of 1980. And it also relied on People v. Lawrence, which in 1994 drew the line between larceny and robbery at a non-physical, unobtrusive snatching. So I take it you would say the Second Circuit's decision in Jones, where New York is located, is incorrect. It's incorrect, and also the Second Circuit has abandoned that in Pereira-Gomez. It abandoned that basically as dicta when it held in Pereira-Gomez that New York robbery doesn't satisfy the definition of generic robbery. And it said that Jones doesn't apply because it was relying on the residual clause, which it was. The decision was based on the residual clause, and its discussion about generic robbery was merely dicta. Well, now these cases you cite, do they not encompass the threatened use of force? With regard to the purse snatching, no. They draw the line at the non-physical, unobtrusive snatching. So in Lawrence, all we know is that the victim was holding a purse. We don't know any more than that, and the court held that it was not an unobtrusive snatching in that case. What's an unobtrusive snatching? I think an unobtrusive snatching would be one that the victim doesn't realize has happened until it's already complete. So, as the court said, you know, not enough force to engender, just enough force to engender awareness in the victim that it's happening, but not enough force to, actually not enough force to require any, to overcome any resistance by the victim. So it would be a taking without any resistance by the victim. I think that's the correct answer to that question. Don't we just not know from Lawrence? I mean, one of the things about Lawrence that's odd is obviously the victim in that case actually dies. Right. And the defendant is convicted of murder. And so we don't have a ton of discussion in that case about the degree of force with taking the bag, because the case is really about the fact that the victim in that case was, you know, killed. And so it's a little hard to take out of Lawrence the sort of lack of a, you know, detailed discussion about the degree of force there, because the court case was really about the murder, right, in Lawrence itself? It was, and it was, but it was felony murder, so the robbery had to exist in order for there to be a felony murder. Right, but the degree of force used in the robbery was not the central piece of the case in Lawrence. So what I'm saying is it seems like to me you're over-reading Lawrence and sort of supporting your point. In fact, it's a case where the defendant, you know, is convicted of murder, and that's really where that case was focused. Well, I don't think I am over-reading Lawrence. And the First Circuit, instead, relied on Lawrence as well as Santiago to say, you know, based on these cases, you know, there's a reasonable probability that the conviction was for attempting to commit an offense that could include a mere purse snatching, based on what is said in Lawrence. But Santiago has the same problem. That victim dies, too. I mean, the two cases you're pointing at, it's not involving force. I mean, in both cases, the victim is killed, right? In both cases, the victim is killed, but the robbery is an underlying element of the murder offense, and that's why they're talking about robbery. So without a robbery, they don't have a felony murder, and that's the issue there. But I think that that's a little bit of a red herring to say that it matters so much that it is also a murder conviction, because they're talking about, I mean, these people were also convicted of robbery. So the court had to decide that there was enough evidence to support a robbery conviction. And in Santiago, the court said it's undecided whether a mere purse snatching. But the state court decisions, they would have had no reason to enter into a discussion of generic robbery in the sense that we do. In which case? In either one of those. Well, no, they wouldn't have, but they're describing what is required for a person to commit a New York robbery. So in that sense, they're extremely relevant, just like the cases discussed in Winston and Garner are relevant to determine, you know, what amounts to a robbery conviction in North Carolina or Virginia. So the fact that they don't decide whether it's generic robbery or not is really not relevant. Can I take a step back just for a minute, which is a little off where you are? But I want to sort of talk about sort of the step zero. So when we look at the certificate of disposition, that goes to establish the fact of conviction. Right. I just want to make sure I'm following through the process. And the fact of conviction, you agree that this establishes the fact of conviction? Of first degree robbery. But when I look at the document itself, what it actually establishes is the statute of conviction. And that is 160.15 subsection 4. So it identifies as the fact of conviction, the actual statute that the conviction was under. Not generally first degree. It specifies as the fact of conviction subsection 4. And so why don't we simply say it doesn't matter whether this is Shepard or not. We're before that step in the process. This is the fact of conviction is specifically subsection 4. Because it's identified as the statute of conviction. We don't have to get to whether that is divisible or not. Because the divisibility question is only where the fact of conviction is ambiguous. Here, no ambiguity of what the statute on which the conviction is based. It says it expressly. 160.15.4. 04. The 04, which a number of cases have said, indicate that's 04 in the statute. And so we simply look at that subsection categorically. And you can take as a given that we would find that subsection to categorically be a crime of violence. So why are we even getting to any of this discussion? Why don't we simply look at the fact of conviction and the statute that's identified on that document? Because that analysis does an end run around what the Supreme Court says in DECAMP. Because you are applying the modified categorical approach if you do that. That is a statute that has subsections. And the court says when you're applying the modified categorical approach, you can only look to Shepard approved documents. But DECAMP is talking about where the fact of conviction is ambiguous. Where you can't tell from the fact of conviction what part of a statute they fell under. The fact of conviction here tells us exactly what part of the statute. That is subsection 4, specially delineated. So we don't have to worry about whether under subsection 1, 2, or 3, whether those would qualify or not. The fact of conviction here is subsection 4. It is specifically identified. And so the whole question of modified categorical doesn't come into play because there's not any ambiguity on the fact of conviction. Well, I respectfully disagree with your honor. I think that DECAMP makes clear that if you're trying to determine which element of a set of alternative elements the defendant was convicted of, you can only look to Shepard approved documents to do that. And the analysis that your honor is suggesting... Well, you already conceded that this document shows the fact of conviction. The fact of conviction... Wait a minute, if you don't mind. It shows the fact of conviction and you conceded that it was robbery in the first degree. So why wouldn't you finish reading that line to include that subsection of the statute? What's the ambiguity about which portion of the statute it covers? Well, aside from the fact that DECAMP doesn't permit that, I disagree that there's no ambiguity because there's no evidence in the record of what that 04 means. The government cited some other cases, but there's no evidence in this record of what the 04 means under New York law. And again, I mean, just going back to... So there's ambiguity about what robbery means too. In the same sense, robbery first, well, maybe we don't know what first means. But, you know, we also don't like put bonders on. We know what the word robbery means. We know what the word first means. We know what degree means. And you agree that that's the fact of conviction. But then we close our eyes when we get to the end of the line. When it is 160, we don't, I mean, there's not evidence in the record as to what the 160 is, right? But everybody here knows what the 160 is. But I just go back to DECAMP because the court can't get around the fact that if you're trying to determine which of an alternative set of elements the defendant was convicted of, you have to look at Shepard-approved documents because you're making a fact find. Excuse me, but I think the problem, to me at least, you're not answering the question, Ms. Hester, that why do you even get to DECAMP if you have, there's no confusion or question, if the certificate of disposition is admissible as to what he was convicted of, there is no question as to which elements would be applied to first-degree robbery under subsection 4. We know that you have to display what appears to be a pistol, revolver, shotgun, rifle, machine gun, or other firearm. So where is the ambiguity that would necessitate the analysis mandated by DECAMP? Well, the ambiguity would be what the 04 means in this case. Oh, we just read what the statute says, don't we? Well, I mean, we just don't know what this document means as far as the 04. But then again, I go back to DECAMP because we have a list of alternative elements. Well, let's go back. You conceded at least twice that it's robbery in the first degree, and this document on page 52 of the appendix is evidence of the conviction and the crime of conviction. So, I don't know, we keep asking the same question. Why wouldn't we just read it the way it's written in the New York statute? Well, and the only answers I have are, first of all, there's no evidence in the record of what the 04 means, and second of all, it is a statute with alternative elements. Well, would you say that there's no evidence in the record of what 160.15 means? Well, I've already conceded that it's evidence of first degree robbery, so I don't know that I can undo that concession, but maybe, I mean, maybe it's not. I just think that the law is less exacting when you're deciding whether a person is convicted of, as Judge Wilkinson described it in Washington, the bare offense, as opposed to which subsection of the statute in a set of alternative elements, because at that point, the court is making fact findings about what the prior conviction was, and that's why the Shepard analysis comes into play, so that there's not any Sixth Amendment problem with fact finding and sentencing. That's why you have to rely on these trial record documents that are conclusive evidence of what the subsection was, and that's why it's important when you start talking about subsections to look at the Shepard-approved documents rather than a document that was prepared 18 years later. So it sounds like you're saying now that perhaps the certificate of disposition is not admissible to prove what he was convicted under, the statute of conviction. Certainly not under Section 04, no. But why? Why would that same certificate be admissible to show that he was guilty of first-degree robbery and reliable for that, but not to be reliable for the parentheses four? It seems to me either it's reliable or it's not. How do you bifurcate its reliability there? Well, I think the reliability analysis is different when you're talking about the bare fact of a conviction as opposed to which element and a list of alternative elements a person was convicted under. See, I would agree with you completely if it had just been first-degree robbery, and you'd say, well, you can't look beyond that. You've got to go into the analysis. But where you have the specific subsection identified in the clerk's certificate, if the clerk's certificate is good for the conviction of robbery, first-degree robbery, it seems to me it's got to be good for the paren four. I don't see how it can be reliable as to one part and unreliable as to the other. Well, again, it's back to the underlying analysis of Shepard about why you can't look at documents outside the trial record to determine which element of a list of alternative elements a person was convicted under. Okay, so we're back to you saying it's not reliable at all then. It's not reliable for determining which alternative element a person has been convicted under. All right. You've got some time left on rebuttals, so we'll now hear from Mr. Enright. Thank you, Your Honor. May it please the Court, Anthony Enright for the United States. I want to pick up on the point you were just discussing. In addition to identifying the specific component of the specific statute, there's a statute under New York law, there's a New York statute that specifically says that when you have a statute that identifies different subsections and sets out different subsections like the New York robbery statute, those are separate offenses. So I think that further supports what Judge Keenan and Judge Richardson were discussing and Judge Agee, that the certificate of disposition is reliable evidence of the specific offense of conviction. The offense of conviction is 160, or which is it, is the subsection 4 of the first degree robbery statute. So in that sense, is it a Shepard document at all? It is. I think it qualifies either way because it does meet the requirements of Shepard. It is a judicial document, and it's got reliability comparable to the documents identified in Shepard. How is it a Shepard document, though? Because Shepard talks really in the terms of the present sense. It's looking only to primary documents, and it talks about the documents that are conclusive records made or used in adjudicating guilt. This certificate was not made or used in adjudicating guilt. It seems to me your far better argument is that you don't even get to the question of whether it's a Shepard document because you have the fact of conviction in the certificate with the specific paragraph because it's not a primary document under Shepard. Your Honor, I think that is a fair argument, but I want to mention that I do think that it is a Shepard document. Okay. How is it made or used in adjudicating guilt, the certificate that was done 18 years later? Shepard documents are not limited to documents made or used in determining guilt. An indictment isn't made or used in determining guilt, neither is a judgment, neither is a transcript of a plea colloquy. Well, the primary documents, the Supreme Court later interpreted, we're talking about the primary documents, the plea colloquy, the indictment, the different information that came in the process of adjudicating guilt. Yes, Your Honor. Not 18 years later. So why ride that horse here when you don't really have to, it seems to me. Well, I'm certainly happy to move on to other things. I do want to briefly address that the examples Shepard specifically provides include, for example, a transcript. A transcript in this case was prepared six months after the plea colloquy occurred. Sometimes it occurs years later. Right, but it was simultaneous recording that was made. Well, certainly. Just because it was typed later doesn't mean that. That, I think, is exactly what we have here. The certificate of disposition is prepared by a court, but it's a record of what occurred previously, just like a transcript is. I think it does meet the requirements of Shepard. You might want to just back up and turn down a different lane. Certainly, Your Honor. Because in every case where this type of issue comes up, you're going to have a document that shows the fact of conviction. And that's not a, you don't even get into a Shepard analysis on that. Certainly, Your Honor, and I think that is particularly appropriate here because we do have a specific New York statute that says that the subsection is an offense, and the fact of the offense of a conviction can be shown by any reliable evidence. But wouldn't you just take, is there a reason it's not plain on the face of the document? I don't think there's a reason it's not plain on the face of the document. The document says specifically subsection 4. So her response to that, just to make sure that I'm understanding your position, her response to that, and there are some Second Circuit cases that disagree with her, but her response is, yeah, but when you look at this, it's not clear what that 04 means. That could be that it was the fourth day of the week, or that it happened in April, or that 04 could mean, in theory, anything. The Second Circuit has said, no, it is readily apparent that that 04 is referring to the fourth subsection. But tell me why that 04 is plain on its face. Forget about this other statute. Why do we know that that's referring to subsection 4? Well, Your Honor, I do think we have some law including in the, I don't know if I have a case handy, but I think there are some cited by the Second Circuit where New York decisions consider that subsection, that same thing, in determining which component of the statute was violated for the purpose of their own recidivism statute. I would also note that the fact that it could possibly be debated isn't conclusive of anything. A Shepard document can be disputed. There's a decision from this court. We're not talking about Shepard documents. A Shepard document. We're not talking about Shepard documents. Fact of conviction documents. Certainly a fact of conviction document, because the district court can consider any reliable evidence in considering what the fact of a conviction is, and certainly the defendant has an opportunity to dispute that if there's any accuracy issues at sentencing. And even a Shepard document, but certainly that, is subject to dispute. Sometimes there's a conflict between the documents, and you can argue that. There wasn't any challenge to the accuracy of the document below, and the district court was well within its authority to find it meant what it said. I do want to also discuss the issue this court asked us to supplementally brief, because I do believe this court got the answer right in bowls when it held that New York robbery of any degree, substantially corresponds to the requirements of the force clause. New York robbery requires forcible stealing, which is using or threatening the immediate use of physical force upon another person. That's almost the same terms as the force clause, and the degree of force is the same as the degree in the force clause. That is, force capable of causing physical pain or injury to another person. This, or the intermediate appellate court, the appellate division of the Supreme Court in New York, actually addressed a jury instruction given in response to a question about what's the minimum amount of force required. And the court instructed, physical force connotes a physical power causing or capable of causing or inspiring fear of some physical harm against the person at whom it's directed. That's New York versus, or people versus curate. And that's almost the same definition given by the Supreme Court in the Curtis Johnson case. And the appellate division held that decision was correct. And that's consistent with the New York Court of Appeals, which reversed convictions multiple times, or the appellate division, which reversed multiple times when there was no evidence the victim was injured in the United States versus Davis, no evidence the victim was intimidated, knocked down, struck, or injured, or threatened in New York versus Middleton. That's a standard of force capable of causing pain or physical injury. Okay. What about the concept of generic robbery here? I think it also may be that that might be an easy fit. I think so. I think it is an easy fit, Your Honor. Based on the fact that Gaddis made clear that the degree of force in generic robbery does not require the same level of violent force that's required under the force clause. Certainly. Any amount of force beyond what's necessary to part the person in the property is sufficient under Gaddis. And the New York statute makes that clear because it requires a larceny plus force. And the New York courts have repeatedly rejected a mere snatching as a robbery several times. Middleton, Dobbs, Lumpkin, Davis. You need some force beyond that. I think it's violent force, but certainly some force beyond the force necessary to commit a larceny. Some of the other issues the defendant has raised, they don't take it outside of the scope of generic robbery either, that the offense can occur or that the force can occur immediately after the taking. That's not inconsistent with Gaddis. Gaddis held that the generic definition is the misappropriation of property under circumstances involving immediate danger to the person. And New York law incorporates that immediacy requirement. The force has to occur at the latest, immediately after the taking, and it has to occur during the course of a larceny. That's a specific requirement. Also, a majority of states, the South Carolina Supreme Court, I think, did the work for us, as did the Second Circuit and Professor Torsha. A robust majority of states permit the force to occur after the taking. I do want to briefly address the issue raised in the defendant's, I think, first 28J letter, which is the question whether the immediate presence requirement that exists in some states changes the generic definition. It doesn't. I think it's settled under Gaddis that immediacy is the only standard. There's no requirement of presence. That's one way to satisfy it. But I also want to mention that in probably the majority of the states cited in the Second Circuit decision, identifying a presence requirement, presence is construed so broadly as to create no issue in terms of whether those states would recognize a New York robbery as a robbery. Basically, if the property is within the victim's control, it is in their presence in most of these states. California, for example, when the defendant's near an ATM, he's in the presence of the money in his bank account. And that's the law in California, Florida, Idaho, Illinois, Kansas, Louisiana, Nebraska, Oklahoma, Washington, a few others, all of those are cases cited by the Second Circuit. And I think they got that issue. So I do think there are several grounds for affirming the judgment of the district court that robbery is a crime of violence under the guidelines. And if the court has no further questions, I will yield the balance of my time and ask that the court affirm. All right. Thank you very much, Mr. Enright. Ms. Hester, you've got some time left in rebuttal. So if the court were to conclude that the certificate of disposition is confirmation of the crime of conviction, that it was under subsection 4 of the robbery statute, tell us why Mr. Hammond's conviction isn't either or both force or generic robbery. I can't if you reach that conclusion. But again, I think that conclusion is wrong. And I've gone back to DeKalb to see whether DeKalb requires any ambiguity in looking at a non-Shepard document. And I don't see that anywhere. I mean, what it says is that a divisible statute, if one alternative in a divisible statute matches an element in a generic offense but the other does not, the court has to apply the modified categorical approach. So I just don't think that the court can do an end run around that requirement by looking at a non-Shepard document to determine which subsection of a divisible statute the defendant has violated and then say, well, that isn't a subsection, that's actually the offense. Which sort of begs the question of, well, what is the divisible statute? Because if subsection 04 is considered the statute, then there's really nothing left to divide. I don't think there's any precedent to support that type of analysis, Your Honor. And I think it's inconsistent with DeKalb. I would like to go on. So talk to us a little bit about Thompson then. So Thompson's a case out of the Fourth Circuit that says, you know, the fact of conviction doesn't just mean conviction, right? There's not some crime. It's the crime identified on that document. So that's the Fourth Circuit's decision in Thompson. The Fifth Circuit does the same thing, right? Sort of goes and says, no, no, we're not looking at some crime, right? We're looking at the crime, the statute that's identified in the document that we're looking at. And you're talking about the Arias-Euseda case. I'm not familiar with the Thompson case. I don't think, was that cited in the briefs? I don't think that it was. I don't think so. So I'm not familiar with that one, Your Honor. But again, I would say Arias- And the Fifth Circuit is the Neri Hernandez case. Neri Hernandez. What I would say to that is that it's inconsistent with DECAMP. And if Thompson says that, it's inconsistent with DECAMP as well. I just don't think that you can say the statute is the subsection when the entire statute itself is divided into subsections. I think that's wrong. Why isn't there a match as generic robbery under the enumerated offense clause? Why doesn't this meet the definition of GADIS regarding generic robbery? Well, because, as I said, because the purse snatching, the amount of force is not enough. But there are other reasons as well. Well, GADIS says it's under involving immediate danger to the person. I mean, purse snatching, there's danger to the person, isn't there? Well, but Fluker and GADIS both say that a snatching is not sufficient to satisfy generic robbery. And I cited Fluker, which is a recent case, in a 28-J letter. So I think that a snatching that is just enough force to engender awareness, but not enough force to overcome resistance, would not satisfy generic robbery. But there's another reason as well, and that goes to the immediacy requirement. Because, as you said, GADIS requires immediate danger to the person. And in the Thomas case, the New York Thomas case, you can see that New York courts interpret this immediately after the taking requirement very broadly. In that case, it was a shoplifting, and the defendant fled, and a store security guard saw him, took enough time to tell people that he was going to chase him, and then followed him for 10 minutes, four city blocks, before he had an encounter with him, in which the defendant used force. And there's no indication in that case that the defendant was still in flight at the time that happened. So that, again, takes it outside of the GADIS definition. There's another reason as well, which goes back to the Second Circuit's recent decision in Pereira-Gomez, where they held that it's not generic robbery. And they said because it's not force or presence. And, of course, GADIS defined it more broadly than force or presence. But GADIS also said the immediacy requirement is satisfied by force or presence or by an injury requirement. And categorically, the New York statute doesn't require an injury requirement either. So for those reasons also, it doesn't satisfy the requirements of generic robbery. I see I'm out of time. Thank you. Thank you very much. We'll come down and greet counsel and move on to our next case.
judges: G. Steven Agee, Barbara Milano Keenan, Julius N. Richardson